23-mj-1041-DLC

# AFFIDAVIT OF SPECIAL AGENT MICHAEL ROMEO
# IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Michael Romeo, being sworn, state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed as an ATF Special Agent since 2016 and am currently assigned to the Boston Group II Field Office. As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by prohibited persons, and the use of firearms in drug trafficking crimes. I am a graduate of the ATF National Academy and of the Federal Law Enforcement Training Center. During the course of my law enforcement career, I have participated in the execution of state and federal search and/or arrest warrants for violations of firearms and narcotics laws.

2. As a Special Agent for ATF, some of my duties include conducting criminal investigations into cases of illegal possession/transfer of firearms, firearms trafficking, firearms manufacturing and violent crimes involving firearms and narcotics trafficking. Through my training, knowledge, and experience, I have become familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the use and trafficking of illegal firearms. I have been the affiant on affidavits in support of federal search warrants and arrest warrants. I have participated in and performed surveillance and made arrests of firearm and narcotics traffickers who utilize their electronic devices to further their illegal activity. During the course of my professional experience, I have interviewed numerous defendants, witnesses, victims, confidential informants, and other police officers regarding the illegal trafficking of firearms.

3. During my tenure with ATF, I have written and/or participated in the execution of federal search warrants, and have debriefed defendants, informants, and witnesses with

1

personal knowledge regarding firearms and narcotics trafficking and the operation of firearms and/or narcotics traffickers. I have also received training through my position as an ATF Special Agent involving firearms and narcotics trafficking. Among other things, this has familiarized me with: (1) the manner in which illegal guns are brought into this state and sold; (2) firearm and narcotics traffickers' methods of operation, including their acquisition, storage, and transportation of both illegal guns and drugs; and, (3) the widespread utilization of cellular telephones in the course of such activities.

    4.    Based on my training and experience as a special agent, I am familiar with federal firearm laws. I know that it is a violation of Title 26 U.S.C. § 5861(a), for any person to engage in the business as a manufacturer or importer of, or dealer in, firearms without having paid the special occupational tax required by § 5801 for his business or having registered as required by § 5802; and it is a violation of Title 18 U.S.C. § 922(o) for any person to transfer or possess a machinegun.

## PURPOSE OF AFFIDAVIT

    1.    I submit this affidavit in support of a Criminal Complaint charging Elijah NAVARRO ("NAVARRO"), DOB: xx/xx/1998, with engaging in the business as a manufacturer or importer of, or dealer in, firearms without having paid the special occupational tax or having registered as required, in violation of 26 U.S.C. § 5861(a) and transferring or possessing a machinegun, in violation of 18 U.S.C. § 922(o).

    2.    I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the ATF and other federal, state and local law enforcement agencies.

3.  I submit this affidavit for the limited purpose of establishing probable cause to believe NAVARRO has committed the above offenses. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## THE INVESTIGATION

### I. BACKGROUND

4.  In January 2023, the ATF and the Boston Police Department ("BPD") began investigating NAVARRO for his involvement in a firearms manufacturing and trafficking operation. Under the ATF's direction, an ATF cooperating witness ("CW-1") [1] has made several controlled buys of machinegun conversion kits (hereinafter referred to as "machinegun conversion devices" and also commonly known as "switches," or "Glock chips") from NAVARRO, which were audio and video recorded.

5.  As detailed herein, NAVARRO is the subject of an investigation being conducted by ATF related to whether NAVARRO is violating federal law by possessing a firearm not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Section 5861. I know the following regarding federal law:

    a.    Certain types of firearms are regulated under Title 26 of the United States Code, which is the Internal Revenue Code. These regulated firearms include machineguns, which are defined for purposes of Title 26, United States Code, Sections 5801-72 to include "any weapon which shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" and also includes "any part designed and intended solely and

---

[1] CW-1 has cooperated reliably in dozens of ATF investigations against dozens of federal defendants, in several offices, for more than six years, and has testified in court proceedings. CW-1 has an extensive criminal history including felony convictions for Trafficking Stolen Property, Residential Burglary, Assault in the 2nd Degree (Felony), Custodial Assault, Theft of a Motor Vehicle, and Unlawful Possession of a Firearm, all in the State of Washington. CW-1 has been supervised by at least four ATF Special Agents, including me, and has consistently been found to provide information that is credible. CW-1's cooperation is financially motivated and CW-1 is being paid for his/her services and information provided. Based on the corroboration, including recordings, I believe that CW-1's information is reliable.

3

        exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." Title 26, United States Code, Section 5845(a)(6) and (b).

    b.    Title 26, United States Code, Section 5861(a) provides that it is unlawful for a person "to engage in business as a manufacturer or importer of, or dealer in, firearms, without having paid the special (occupational) tax required by section 5801 for his business or having registered as required by section 5802." Title 26, United States Code, Section 5801 provides that "every importer, manufacturer, and dealer in firearms shall pay a special (occupational) tax for each place of business" and sets rates for the tax. Title 26, United States Code, Section 5802 provides that "each importer, manufacturer, and dealer in firearms shall register with the Secretary in each internal revenue district in which such business is to be carried on, his name, including any trade name, and the address of each location in the district where he will conduct such business."

    c.    Title 26, United States Code, Section 5861(d) provides that it is unlawful for a person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

    d.    Title 26, United States Code, Section 5861(j) provides that it is unlawful for a person "to transport, deliver, or receive any firearm in interstate commerce which has not been registered as required by this chapter."

    e.    Title 26, United States Code, Section 7302 provides that "[i]t shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property."

5.    Further, NAVARRO is being investigated for violating federal law related to 18 U.S.C. § 922(o) by transferring or possessing a machinegun. I am familiar with a type of firearm part known as a machinegun conversion device, which converts certain firearms from semi-automatic to fully-automatic, thus rendering the firearms capable of firing multiple shots by a single function of the trigger. As these are parts intended to convert a firearm into a machine gun, a machinegun conversion device itself qualifies as a "machinegun" under the statute.

4

6. Under the National Firearms Act, machineguns must be registered with the Bureau of Alcohol Tobacco and Firearms. See 26 U.S.C. § 5841(a). Under 18 U.S.C. § 922(o), it is unlawful for any person to transfer or to possess a machine gun that is not lawfully owned and registered. It is illegal to possess an unregistered machinegun, whether or not the individual is a prohibited person under 18 U.S.C. § 922, for another reason such as a felony conviction.

7. I have learned during the course of this investigation that NAVARRO is not a licensed importer, licensed manufacturer, or licensed dealer of firearms. Further, a query of the Massachusetts Criminal History Records Bureau – Massachusetts License to Carry ("LTC") / Firearms identification Card ("FID") records revealed that NAVARRO does not possess a MA LTC and/or FID.

8. For each of the controlled buys described below, law enforcement followed the following procedures: law enforcement officers first searched CW-1's vehicle for money and contraband, with negative results. Officers then provided to CW-1 Official Agency Funds ("OAF") and a recording device and transmitter for use in the purchase. Officers then directed CW-1 to make a controlled purchase of machinegun conversion devices and conducted surveillance while CW-1 drove to a prearranged location to meet NAVARRO, throughout the transaction, and as CW-1 drove back to a prearranged meet location to meet with officers. There, officers retrieved the machinegun conversion devices and recording and again searched CW-1's vehicle for contraband and money, with negative results.

II. **CONTROLLED PURCHASES FROM NAVARRO**

6. In January 2023, CW-1 made contact with NAVARRO on the TARGET PHONE, through a series of phone calls and text messages, under the direction and in the presence of agents, during which NAVARRO agreed to sell 12 machinegun conversion devices to CW-1 for $1,700.

5

7.     On January 19, 2023, CW-1 communicated with NAVARRO, during which NAVARRO texted CW-1 to meet in Boston, at a location near the TARGET LOCATION – 1 [2] and NAVARRO's residence [3], in order to purchase machinegun conversion devices. Following the series of communications between NAVARRO and CW-1, law enforcement officers followed the procedures described above, provided CW-1 with $1,700 and instructed CW-1 to meet with NAVARRO and make the machinegun conversion devices purchase. Law enforcement officers subsequently surveilled CW-1 to the pre-arranged meeting location near the TARGET LOCATION – 1, where CW-1 parked at approximately 5:16pm.

8.     When CW-1 arrived, he/she informed agents that he/she called NAVARRO, who stated that he was down the street and about 3 minutes away. At approximately 5:26pm, CW-1 called NAVARRO, who did not answer. At approximately 5:34pm, CW-1 received a text message from NAVARRO, who stated that he got pulled over and that he was 2 minutes away.

9.     At approximately 5:39pm, law enforcement officers observed the black Honda Civic park in the area of TARGET LOCATION – 2, which I believe to be NAVARRO's residence. Also at approximately 5:39pm, NAVARRO texted CW-1 that he was "grabbing it," which I believe meant the machinegun conversion devices.

10.    Agents, while monitoring the controlled purchase via physical surveillance, surveillance video cameras, and the transmitter, also observed the following: At approximately 5:39pm, NAVARRO exited the black Honda Civic and walked to the area of the TARGET LOCATION - 1. NAVARRO did not appear to enter the TARGET LOCATION - 2, his residence.

---

[2] I am aware that TARGET LOCATION – 1 is a residential address involved in NAVARRO's firearms manufacturing and trafficking operation. I am not including that specific address for the purpose of this affidavit in support of a criminal complaint.

[3] I am aware of NAVARRO's residential address, hereinafter referred to as TARGET LOCATION – 2. I am not including that specific address for the purpose of this affidavit in support of a criminal complaint.

NAVARRO remained in the area of the TARGET LOCATION – 1 for approximately 3 minutes, and at 5:42pm, NAVARRO departed the area of the TARGET LOCATION – 1 and walked to the nearby alleyway. At approximately 5:45pm, NAVARRO emerged from the alleyway, called CW-1, and then approached CW-1's car.  NAVARRO approached the front driver area of CW-1's vehicle and engaged in a brief conversation with CW-1, during which NAVARRO and CW-1 conducted an exchange. After the exchange, NAVARRO walked past the TARGET LOCATION - 1, to the rear parking lot of the TARGET LOCATION – 1 briefly, and then walked back in the direction of the TARGET LOCATION - 1.  CW-1 then left the area.

11. After CW-1 left the vicinity of the TARGET LOCATION - 1, law enforcement officers surveilled CW-1 to a predetermined location and retrieved from CW-1 the recorder and transmitter and a plastic bag containing 2 machinegun conversion devices. Law enforcement officers then searched CW-1's vehicle again, with negative results. During the debriefing, CW-1 told agents that CW-1 met with NAVARRO where he/she purchased the firearms in exchange for $400 the OAF.  CW-1 provided the remaining $1,300 in OAF to agents.

12. CW-1 also informed agents that during the exchange, NAVARRO told CW-1 that there was a miscommunication and words to the effect of "we are going to make them, I have 2 right now that are done, so I'll give you the two, just give me four."  When CW-1 asked to inspect the machinegun conversion devices, NAVARRO stated "it stays full, it doesn't have like a button." CW-1 inspected the devices and handed NAVARRO $400.  NAVARRO then stated "I'm going to print everything, I should get them done by 10 or 9," and further discussed a price of $1,300 for the remaining 10 machinegun conversion devices.  Based on this conversation, I believe that NAVARRO is creating the machine gun conversion devices himself, or having them created for

him to sell, using a 3D printer. I have also reviewed the video recording of this controlled purchase and determined that it was consistent with the details described by CW-1.

13.     On January 25, 2023, CW-1 communicated with NAVARRO through the TARGET PHONE and arranged to purchase the remaining 10 machinegun conversion devices. During these initial communications, CW-1 was directed to the "same spot," which I understood to mean near the TARGET LOCATION - 1.

14.     Following the series of communications between NAVARRO and CW-1, law enforcement officers followed the procedures described above, provided CW-1 with $1,300 in OAF and instructed CW-1 to meet with NAVARRO and make the firearm purchase, this time accompanied by an undercover law enforcement officer ("UC-1"). Law enforcement officers subsequently surveilled CW-1, who traveled in a vehicle with UC-1, to the pre-arranged meeting location in the vicinity of the TARGET LOCATION – 1 in Boston, MA.

15.     While law enforcement officers surveilled CW-1 and UC-1 to the pre-arranged meeting location, additional law enforcement officers were conducting surveillance at the TARGET LOCATION – 1 and at approximately 5:07pm, CW-1 and UC-1 arrived and parked in the vicinity of the TARGET LOCATION - 1.

16.     When CW-1 arrived, he/she informed agents that at approximately 5:09pm, CW-1 called NAVARRO, during which NAVARRO stated words to the effect of "give me 5 to 10 minutes because I'm cleaning up and shit." At approximately 5:13pm, law enforcement officers observed a gray 2016 Honda Civic parked near the TARGET LOCATION - 1 and an unknown male ("UM-1") exited the vehicle and entered the TARGET LOCATION – 1.

17.     At approximately 5:14pm, UC-1 observed NAVARRO exit the TARGET LOCATION – 1, walk directly to CW-1's vehicle and get in. Agents, while monitoring the

8

controlled purchase via physical surveillance, surveillance video cameras, and the transmitter, observed the following: NAVARRO entered the back seat of CW-1's vehicle and engaged in a brief conversation with CW-1, during which NAVARRO and CW-1 conducted an exchange. After the exchange, NAVARRO walked directly from CW-1's vehicle down the street, before changing directions and walking back to the area of the TARGET LOCATION - 1.

18. After CW-1 and UC-1 left the vicinity of the TARGET LOCATION - 1, law enforcement officers surveilled CW-1 to a predetermined location and retrieved from CW-1 the recorder and transmitter and a clear bag containing 10 machinegun conversion devices. Law enforcement officers then searched CW-1's vehicle again, with negative results. During the debriefing, CW-1 and UC-1 told agents that they met with NAVARRO where he/she purchased the firearms in exchange for $1,300 the OAF.

19. CW-1 and UC-1 also told agents that during the exchange, NAVARRO told CW-1 that if he/she wanted to grab some more, it would be the same price. I have also reviewed the video recording of this controlled purchase and determined that it was consistent with the details described by CW-1 and UC-1.

## CONCLUSION

20.     Based on the foregoing, there is probable cause to believe that on or about various dates including January 19, 2023 and January 25, 2023, in Boston, in the District of Massachusetts, NAVARRO did engage in the business as a manufacturer or importer of, or dealer in, firearms without having paid the special occupational tax or having registered as required, in violation of 26 U.S.C. § 5861(a) and transfer or possess a machinegun, in violation of 18 U.S.C. § 922(o).

I declare the foregoing is true and correct.

*Michael Romeo* DLC
Michael Romeo
SPECIAL AGENT, ATF

The affiant appeared before me on this date, by telephonic conference or other reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Subscribed and sworn to on
this 15 day of February, 2023.

_____
HONORABLE DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

